IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

SCOTT ERLANDSON,

                   Plaintiff,

    v.

ANDREW SAUL,
Commissioner of Social Security,

                   Defendant.

OPINION AND ORDER

19-cv-151-slc

---

Plaintiff Scott Erlandson challenges the final decision by defendant Commissioner of Social Security[1] denying Erlandson's claim for disability insurance benefits (SSDI) under the Social Security Act.  42 U.S.C. § 405(g).  Erlandson contends that the administrative law judge (ALJ) who denied his claim did not account adequately for his limitations in concentration, persistence, or pace (CPP) in the residual functional capacity (RFC) assessment or in his hypothetical question to the vocational expert.[2]  For the reasons explained below, I conclude that Erlandson has failed to show that the ALJ erred in this respect and am affirming her decision.

The following facts are drawn from the Administrative Record (AR), filed with the Commissioner's answer in this case:

---

[1] I have amended the caption to reflect that the new Commissioner of Social Security is Andrew M. Saul.

[2] Although Erlandson states in the introductory section of his brief that "the ALJ [erred] in her assessment of the opinion of Johnson's counselor Debra Mullen," he did not develop this argument, which seems to have been included in error.

## BACKGROUND FACTS

Scott Erlandson was born on December 17, 1964 and was 50 years old on his alleged disability onset date, July 6, 2015.  AR 26.  Erlandson filed an application for disability insurance benefits on July 27, 2015, alleging that he was disabled as a result of a variety of medical conditions, including a brain tumor in 1968, a stroke in 1995, sleep apnea, high cholesterol, depression, anxiety, loss of hearing, a thyrondectomy in 1993, traumatic eye injury and abdominal wall weakness.  AR 14, 21.  In a function report completed on August 14, 2015, Erlandson reported that he can pay attention for 30 minutes at a time, he has short-term memory issues and trouble following instructions, he is confused by multiple duties and stressful situations, and he does not handle changes in routine well.  AR 234-41.

After Erlandson's application was denied at the initial level and upon reconsideration, he requested and was granted a hearing before ALJ Deborah Giesen on March 30, 2018.  He was represented by counsel at the hearing.  AR 14.  Erlandson testified that he is unable to work because his last job as a dump truck driver—which was 12 to 14 hours a day—was too stressful and involved "too many variables" and things to track.  AR 58-59.  However, he testified that he does not experience these difficulties with his seasonal fertilizer delivery job because the hours are shorter (4 to 6 hours a day) and the job involves only a two- to three-step process.  AR 59-60.

The ALJ issued a written decision denying Erlandson's application on April 16, 2018.  AR 14-27.  Applying the familiar five-step sequential evaluation process, she determined that Erlandson was severely impaired by bilateral sensorineural hearing loss and anxiety disorder.  AR 16.  However, the ALJ found that none of Erlandson's impairments met or equaled the criteria

2

for any listed impairment, alone or in combination. AR 18. In reviewing the "B criteria" of the mental impairment listings, the ALJ found that Erlandson had moderate limitations in concentration, persistence, or pace based on his self-reported difficulties with concentration and short-term memory. AR 19. The ALJ determined that despite Erlandson's severe impairments, he retained the RFC to perform work at all exertional levels but was limited to work environments with moderate noise levels and no telephone use. The ALJ found that Erlandson only could engage in simple and routine tasks in a low-stress setting where changes were infrequent. AR 20.

In reaching her decision, the ALJ stated that she found Erlandson's subjective complaints concerning his symptoms and limitations not entirely consistent with the medical evidence and other evidence in the record, which reveals only minimal objective pathology, mild clinical abnormalities, minimal outpatient treatment and conservative treatment recommendations. AR 20-21. The ALJ gave great weight to the opinions of the state agency medical and psychological consultants and some weight to the opinion of a psychologist who performed a consultative examination on Erlandson on September 15, 2015. AR 22, 24.

Relying on the testimony of a vocational expert (VE), the ALJ found that Erlandson was unable to perform his past work as a dairy farm laborer, hand packager, heavy truck driver and dump truck driver, as he regularly performed those positions. AR 25. However, also based on the VE's testimony, the ALJ determined that Erlandson retained the RFC to perform representative jobs existing in significant numbers in the national economy, including industrial cleaner, laundry laborer and hospital cleaner. AR 26.

## OPINION

In reviewing an ALJ's decision, I must determine whether the decision is supported by "substantial evidence," meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014) (citations omitted). This deferential standard of review "does not mean that we scour the record for supportive evidence or rack our brains for reasons to uphold the ALJ's decision. Rather, the administrative law judge must identify the relevant evidence and build a 'logical bridge' between that evidence and the ultimate determination." *Id.; see also Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009) (administrative law judge need not discuss every piece of evidence but "must build a logical bridge from evidence to conclusion"); *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005) ("[T]he ALJ must . . . explain [her] analysis of the evidence with enough detail and clarity to permit meaningful appellate review.").

Erlandson's sole argument on appeal is that the ALJ's use of the general terms "simple and routine tasks," "low stress work," and "infrequent" changes in the RFC assessment and hypothetical question to the VE fails to account for his moderate limitations in CPP, as found by both the ALJ at step three of the sequential evaluation and by the state agency consulting psychologists, to whose opinions the ALJ gave great weight. As Erlandson points out, the Court of Appeals for the Seventh Circuit has made clear that an ALJ must orient the VE to all of a claimant's limitations, including those in concentration, persistence or pace. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620-21 (7th Cir. 2010) ("[T]he ALJ should refer expressly to limitations on concentration, persistence and pace in the hypothetical in order to focus the VE's attention on these limitations and assure reviewing courts that the VE's testimony constitutes substantial

4

evidence of the jobs a claimant can do.").  Although the ALJ does not need to use the magic words "concentration, persistence or pace," the record must show that the VE was made aware of the claimant's particular limitations through the hypothetical question or other means. *Lanigan v. Berryhill*, 865 F.3d 558, 565 (7th Cir. 2017) (ALJ must explicitly address CPP limitations in hypothetical unless VE familiar with medical file or underlying mental conditions or hypothetical otherwise accounts for limitations); *Yurt v. Colvin*, 758 F.3d 850, 857-58 (7th Cir. 2014).  Erlandson is correct that the court of appeals has held that the types of limitations the ALJ included in her RFC assessment and the hypothetical question are general functional limitations related to unskilled work that do not address a claimant's general deficiencies in CPP. *O'Connor-Spinner*, 627 F.3d at 620.  *See also Stewart v. Astrue*, 561 F.3d 679, 685 (7th Cir. 2009) (use of term, simple, routine tasks, did not account for limited ability to understand instructions); *Young v. Barnhart*, 362 F.3d 995, 1004 (7th Cir. 2004) ("simple, routine" tasks did not adequately account for "impairment in concentration"); *Craft v. Astrue*, 539 F.3d 668, 677-78 (7th Cir. 2008) ("simple, unskilled work" does not account for difficulty with memory, concentration or mood swings).

However, the ALJ did not merely assume that limiting Erlandson to simple and routine tasks in a low stress setting with infrequent changes would account for his limitations in CPP. Rather, the ALJ relied on the expert opinions of two state agency psychologists.  On November 3, 2015, Dr. Jack Spear, Ph.D. reviewed the medical record and concluded that Erlandson had moderate limitations in CPP.  AR 80.  Dr. Spear completed a worksheet known as the Mental Residual Functional Capacity Assessment (MRFCA) on which he rated the following concentration, persistence, and adaptation limitations as moderate: Erlandson's ability to

5

maintain attention and concentration for extended periods, to respond to changes in the work setting, to complete a normal workday and workweek without interruptions from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods.  AR 83-84.  Asked to describe Erlandson's sustained concentration and persistence capacities in narrative form, Dr. Spear wrote:

> Claimant's memory issues may moderately affect his ability to maintain concentration, persistence and pace.  He would have marked difficulty trying to carry out detailed instructions but would be able to carry out simple instructions.

> AR 84.

With respect to adaptation, Dr. Spear wrote in narrative form that "[c]laimant has moderate limitations in his ability to respond appropriately to changes and stress in the workplace due to anxiety issues," but that he has the capacity for unskilled work.  AR 84-85.

On January 26, 2016, another state agency psychologist, Stacey Fiore, Psy.D., reviewed the record and completed another MRFCA form in which she reached the same conclusions as Dr. Spear with respect to Erlandson's sustained concentration and persistence and adaptation limitations.  AR 95, 98.  Dr. Fiore agreed with Dr. Spear's bottom-line narrative conclusions in both functional areas.  She also wrote:

> Able to maintain attention for two hours at a time and persist at simple tasks over eight- and forty-hour periods with normal supervision; symptoms would preclude persistence at more complex tasks over time.
>               *     *     *
> Able to tolerate simple changes in routine, avoid hazards, travel independently, and make/carry out simple plans.

> AR 99.

6

As the Commissioner points out, the court of appeals has held in both published and unpublished opinions that an ALJ is entitled to rely on a medical expert who "effectively translate[s] an opinion regarding the claimant's mental limitations into an RFC assessment." *Milliken v. Astrue*, 397 Fed. Appx. 218, 221 (7th Cir. 2010). *See also Burmester v. Berryhill*, 920 F.3d 507, 511 (7th Cir. 2019) ("[A]n ALJ may reasonably rely upon the opinion of a medical expert who translates these findings into an RFC determination."); *Varga v. Colvin*, 794 F.3d 809, 816 (7th Cir. 2015) ("[A]n ALJ may rely on a doctor's narrative RFC, rather than the checkboxes, where that narrative adequately encapsulates and translates those worksheet observations."); *Dudley v. Berryhill*, 773 Fed. Appx. 838, 843 (7th Cir. 2019) (same); *Capman v. Colvin*, 617 Fed. Appx. 575, 579 (7th Cir. 2015) (ALJ may reasonably rely on psychologist's "bottom line-assessment" in narrative section, at least where it is not inconsistent with checklist findings in other section of worksheet). *But see DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019) ("But even if an ALJ may rely on a narrative explanation, the ALJ still must adequately account for limitations identified elsewhere in the record, including specific questions raised in check-box sections of standardized forms such as the PRT and MRFC forms."). Here, the ALJ's phrasing of the RFC and hypothetical incorporated the state agency consulting psychologists' narrative statements that Erlandson was capable of simple tasks and changes in routine.

Erlandson argues that the ALJ erred by not including in her RFC assessment or hypothetical the specific moderate limitations that the doctors endorsed on the MRFCA worksheet regarding his abilities to maintain attention and concentration for extended periods, to respond to changes in the work setting, and to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace

without an unreasonable number and length of rest periods.  *Varga*, 794 F.3d at 816 (narrative must adequately encapsulate and translate worksheet observations); *Capman*, 617 Fed. Appx. at 578-79 (narrative must be consistent with checklist findings in other section of worksheet). Erlandson's argument is not convincing.

Dr. Spear and Dr. Fiore explicitly addressed Erlandson's abilities in these specific functional areas when they found that despite his moderate limitations, he was capable of maintaining attention for two hours at a time, tolerating simple changes in routine, and persisting at simple tasks during a full-time work schedule.  As the Seventh Circuit has recognized, "[a] moderate limitation is not a complete impairment." *Capman*, 617 Fed. Appx. at 579 (citing *Roberson v. Astrue*, 481 F.3d 1020, 1024 (8th Cir. 2007)).  *See also* SSA, Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138, 66164 (Sept. 26, 2016) (effective January 17, 2017) (clarifying that a "moderate" limitation means that a claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is fair.").

Moreover, "the RFC assessment is not an end in itself," it is a tool to help the evaluator assess what work-related activities the claimant can perform despite his limitations. *Milliken*, 397 Fed. Appx. at 222.  The state agency psychologists' narratives expressly addressed Erlandson's ability to maintain attention, concentration, and pace and to adapt to changes in his work setting. From this, the ALJ could reasonably assume that the consultants' narrative statements accounted for all of Erlandson's moderate limitations in those areas.  Accordingly, the ALJ did not err by relying on the narratives in formulating the residual functional capacity assessment and hypothetical question to the vocational expert. *Dudley*, 773 Fed. Appx. at 842-43 (rejecting

argument that state agency psychologists' opinions were flawed because of internal inconsistencies within them and reaffirming that ALJ can rely on doctor's narrative where it adequately translates worksheet observations); *Guntle v. Saul*, 2020 WL 582765, * 2 (N.D. Ind. Feb. 5, 2020) (ALJ accounted for claimant's moderate limitation in CPP by adopting state agency consultants' opinions that although claimant had moderate difficulties in maintaining CPP, he "still retained the ability to understand, remember, and carry out unskilled tasks, attend to task for sufficient periods of time to compete tasks, and manage the stresses involved with work."); *Welch v. Saul*, 2020 WL 38998, *4 (W.D. Wis. Jan. 3, 2020) (finding same).

Erlandson reported that his concentration, persistence, and adaptation limitations resulted from stressful work environments that required too many complex tasks and changes in the work setting. Therefore, the simple task, low-stress, and infrequent change limitations that the ALJ assessed for Erlandson address his specific symptoms. Where, as here, the RFC is tailored to "account for the claimant's demonstrated psychological symptoms," it will be upheld. *See, e.g., Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019) (ALJ adequately accommodated claimant's social anxiety with RFC for simple, routine, repetitive tasks requiring no more than occasional contact with supervisors and coworkers, no contact with public, and an assigned work area at least 10-15 feet away from coworkers); *O'Connor-Spinner*, 627 F.3d at 619 ("We also have let stand an ALJ's hypothetical omitting the terms 'concentration, persistence and pace' when it was manifest that the ALJ's alternative phrasing specifically excluded those tasks that someone with the claimant's limitations would be unable to perform . . . most often . . . when a claimant's limitations were stress- or panic-related and the hypothetical restricted the claimant to low-stress

work.") (citations omitted).  Accordingly, I find that the ALJ did not commit reversible error by translating Erlandson's moderate CPP limitations in her RFC and corresponding hypothetical.

## ORDER

IT IS ORDERED that the decision of defendant Andrew Saul, Commissioner of Social Security, denying plaintiff Scott Erlandson's application for disability benefits, is AFFIRMED. The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered this 22nd day of May, 2020.

BY THE COURT:

/s/
_____
STEPHEN L. CROCKER
Magistrate Judge